**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danielle Behan,<br><br>    Plaintiff,<br><br>v.<br><br>Lolo's Incorporated,<br><br>    Defendant. | No. CV-17-02095-PHX-JJT<br><br>**ORDER** |

Plaintiff Danielle Behan ("Plaintiff") brought this matter alleging that Defendant Lolo's Incorporated ("Defendant") failed to allow her the necessary time and appropriate accommodations to pump breastmilk at work and subsequently retaliated against her when she exercised her right to do so. The Court now considers Defendant's Motion for Summary Judgment (Doc. 46, Mot.), to which Plaintiff has filed a Response (Doc. 50, Resp.) and Defendant has filed a Reply (Doc. 52, Reply).[1] For the reasons that follow, the Court grants Defendant's motion.

**I. BACKGROUND**

Defendant operates the restaurant Lo-Lo's Chicken & Waffles, where Plaintiff worked as a server beginning in July 2013. (Doc. 47, Def.'s Statement of Facts in Supp. of Mot. ("DSOF") ¶¶ 1–2; Doc. 51, Pl.'s Controverting Statement of Facts in Opp'n to Mot. & Request to Strike Commentary & Opinions ("PSOF") ¶¶ 1–2.) She also worked as a

---

[1] The issues have been fully briefed, and oral argument will not aid in the Court's decision. *See* Fed. R. Civ. P. 78(b) (permitting resolution of motions without oral hearings); LRCiv 7.2(f) (same).

bartender and server lead. (¶ 25.) On March 7, 2016, Plaintiff gave birth to her daughter, after which she took six weeks of maternity leave. (¶¶ 5–6.)

When she returned to work in April, Plaintiff took breaks to pump breastmilk. (¶ 7.) Defendant had a policy that all employee breaks were unpaid. (¶ 11.) Plaintiff concedes that she would remain on-the-clock when she pumped—that is, until September 26, 2016. (*Id.*) That day, when Plaintiff left her tables to go pump while she was still on-the-clock, Tracy Williams learned of this and confronted Plaintiff to remind her that breaks must be off-the-clock. (¶¶ 14–15.) Plaintiff maintains that Williams also said Plaintiff could not pump unless she had no tables and that there was no suitable place for her to pump. (¶ 16.) Indeed, Plaintiff testified that she stopped pumping at work after that conversation. (¶ 19.) Meanwhile, time records following September 26 show Plaintiff clocking out for breaks. (¶ 17.) And Manager Gabby Mbodji testified that she told Plaintiff there was a space in the office where she could pump privately. (¶ 18.) Plaintiff stopped breastfeeding altogether in December 2016. (¶ 22.)

Plaintiff filed a discrimination charge with the Arizona Civil Rights Division ("ACRD") on February 7, 2017. (¶ 23.) The charge alleged that Defendant had failed to allow the necessary breaks and location to pump. (*Id.*) The federal Equal Employment Opportunity Commission ("EEOC"), which cooperates with ACRD, retained jurisdiction and ultimately dismissed the charge on February 28. (¶ 24.) On April 14, 2017, Defendant terminated Plaintiff's employment for allegedly stealing confidential customer information in violation of company policy. (¶¶ 41–43.)

Plaintiff filed suit in Maricopa County Superior Court on May 30, 2017. (*See* Doc. 1-2, Verified Compl.) She alleges that Defendant (1) violated the Fair Labor Standards Act ("FLSA") by failing to provide time and a suitable location for Plaintiff to pump while she was breastfeeding (Verified Compl. ¶¶ 20–26 (Count One)); (2) unlawfully retaliated by cutting Plaintiff's hours when she requested those breaks and terminating her employment after she filed a discrimination charge (¶¶ 27–32 (Count Two), 38–42 (Count Four)); (3) engaged in sex-based discrimination by failing to

accommodate her need to pump at work (¶¶ 33–37 (Count Three), 43–46 (Count Five)); (4) wrongfully terminated Plaintiff's employment by ending her employment for an unlawful reason (¶¶ 47–50 (Count Six)); and (5) discriminated against Plaintiff in a manner constituting intentional infliction of emotional distress ("IIED") (¶¶ 51–53 (Count Seven)). Defendant removed to this Court on June 30, 2017. (*See* Doc. 1, Notice of Removal.)

## II. LEGAL STANDARD

Summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). "Only disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that plaintiff must present affirmative evidence to defeat properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

| | |
|---|---|
| 1 | which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d |
| 2 | 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322). |

**III.    ANALYSIS**

Defendant seeks summary judgment on all seven claims. Specifically, Defendant contends that (1) Plaintiff's FLSA claim fails for lack of lost wages; (2) her retaliation claims are beset by a lack of damages, causation, and pretext; (3) her discrimination claims are undermined by Plaintiff's poor job performance, lack of an adverse employment action, and failure to show that similarly situated employees were treated more favorably; (4) Plaintiff lacks both the requisite belief that Defendant was violating Arizona law and proof of causation necessary to prove wrongful termination; and (5) Defendant's alleged actions fall short of the outrageous conduct necessary to prove IIED. (*See generally* Mot.) The Court resolves each argument separately.

**A.    Reasonable Break Time for Nursing Mothers (Count One)**

The FLSA requires employers to provide both "a reasonable break time" for employees to express breastmilk and a private place "other than a bathroom" in which to do so. 29 U.S.C. § 207(r)(1)(A)–(B). Employers need not compensate employees for such breaks. § 207(r)(2). And they are liable only for unpaid minimum wages or overtime compensation caused by their failure to provide the required time and space. § 216(b); *accord Clark v. City of Tucson*, No. CV 14-02543-TUC-CKJ, 2018 WL 1942771, at *3 (D. Ariz. Apr. 25, 2018) ("A plaintiff's damages are limited to lost wages attributable to the § 207(r) violation.") (quotation omitted). As a result, the statute does not always provide a remedy for failure to provide breaks. *Clark*, 2018 WL 1942771, at *5 (citing 75 Fed. Reg. 80073-01). Such is the case here.

For the purposes of this motion, Defendant maintains that, even assuming it violated the statute, such violations did not cause Plaintiff to lose wages. (Mot. at 5.) At her deposition, Plaintiff agreed that Defendant's failure to provide breaks did not cause her to lose any money. (Doc. 47-1, Ex. A–Video Dep. of Danielle D. Behan ("Behan Dep.") at 140:11–141:3.) Calling Defendant's argument "smoke and mirrors," Plaintiff insists not

only that has she presented evidence of lost wages, but also that the statute allows for punitive damages. (Resp. at 6.) Not so. Plaintiff cites no evidence rebutting her earlier admission. (*See id.*) She likewise offers no authority demonstrating that punitive damages are available here. Indeed, the case she cites suggests a more limited view of the FLSA's remedial scheme. *See Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013) (noting that unlike other statutes' broad remedial arsenals, "the FLSA simply remedies the failure to pay wages at the statutory minimum [w]age").

Neither the Supreme Court nor Ninth Circuit has addressed the availability of punitive damages under the FLSA. The two circuits that have considered the question are split. *Compare Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000) (disallowing punitive damages),[2] *with Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108 (7th Cir. 1990) (allowing punitive damages).[3] District courts in this circuit are similarly fractured on the issue. *Compare, e.g.*, *Campbell-Thomson v. Cox Commc'ns*, No. CV-08-1656-PHX-GMS, 2010 WL 1814844, at *10–11 (D. Ariz. May 5, 2010) (following *Travis*), *with, e.g.*, *Tumulty v. FedEx Ground Package Sys., Inc.*, No. C04-1425P, 2005 WL 1979104, at *10–11 (W.D. Wash. Aug. 16, 2005) (following *Snapp*).[4] But the Court need not pick a side now.

Both *Snapp* and *Travis* focus exclusively on the availability of punitive damages for claims under the FLSA's anti-retaliation provision. *See Snapp*, 208 F.3d at 933 (concluding that Congress did not authorize punitive damage awards for retaliation claims); *Travis*, 921 F.2d at 112 ("Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge."). The same is true of their divergent progeny. *See also Campbell-Thomson*, 2010 WL 1814844, at *11 ("[T]he FLSA permits Plaintiff to seek punitive damages for Cox's alleged violation of the Statute's retaliation provisions."); *Tumulty*, 2005 WL 1979104, at *11 (agreeing that "punitive damages are not

---

[2] *See also Moore v. Freeman*, 355 F.3d 558, 563–64 (6th Cir. 2004) (agreeing with *Snapp*'s compensatory, rather than punitive, view of the FLSA).
[3] *But see Perez v. Z Frank Oldsmobile*, 223 F.3d 617, 622 (7th Cir. 2000) (calling *Travis* a "controversial" decision).
[4] In dicta, the Ninth Circuit once called *Travis*'s reasoning "persuasive"; however, *Snapp* had not yet been decided. *See Lambert v. Ackerly*, 180 F.3d 997, 1011 (9th Cir. 1999).

allowed for retaliation claims under the FLSA"). But this claim centers on an alleged violation of the reasonable break requirement—not retaliation.[5] Even if the Court followed its holding, *Travis* and related cases have little to say about the remedies available for § 207(r) violations. Plaintiff meanwhile gives no reason to deviate from this understanding, save that "there is nothing in the statute prohibiting punitive damages" for such claims. (Resp. at 6.) That alone does not warrant a more expansive reading of *Travis*. Plaintiff admittedly lost no money due to Defendant's alleged § 207(r) violations. There is no legal basis to award punitive damages for such noncompliance. The Court grants summary judgment on this claim.

## B. Retaliation (Counts Two and Four)[6]

Plaintiff's retaliation claims also fail. Whether under the FLSA, Title VII of the Civil Rights Act of 1964, or the Arizona Employment Protection Act ("AEPA"), the analysis, and ultimate result, are the same. Each forbids retaliation against employees who exercise the rights recognized by that statute. *See* 29 U.S.C. § 215(a)(3) (FLSA); 42 U.S.C. § 2000e–3(a) (Title VII); A.R.S. § 23–1501(c) (AEPA). Each applies the same burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Spindle Inc. v. Voigt,* No. CV-14-00352-PHX-GMS, 2015 WL 12669896, at *2 (D. Ariz. Sept. 1, 2015) (applying Title VII standard to AEPA claim); *Ramirez v. Boys*, No. CV-16-04407-PHX-DJH, 2018 WL 3862040, at *4 (D. Ariz. Aug. 14, 2018) (using same framework to resolve Title VII and FLSA retaliation claims).

The *McDonnell Douglas* test is straightforward. Plaintiff must first make out a *prima facie* case of retaliation by showing that (1) she engaged in protected activity,[7] (2) she suffered an adverse employment action, and (3) a causal link exists between the two. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003). The

---

[5] Plaintiff also claims that Defendant violated the anti-retaliation provision of the FLSA. Because it grants summary judgment on that claim for a different reason, the Court does not resolve the availability of punitive damages for FLSA retaliation claims in this Order.
[6] To the extent Count Three alleges retaliation in violation of Title VII, the Court's reasoning here applies equally to that claim.
[7] Under the FLSA, Plaintiff must have given Defendant "fair notice that [she was] making a complaint that could subject [Defendant] to a later claim of retaliation." *See Kasten v. Saints-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13 (2011).

- 6 -

evidentiary burden at this juncture "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). The burden next shifts to Defendant, who must provide a legitimate, nonretaliatory reason for the adverse employment action. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004). If Defendant does so, the burden shifts back to Plaintiff, whose "ultimate burden" is then to produce evidence—either direct or circumstantial—from which a reasonable jury might conclude that Defendant's reason is pretextual. *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 693 (9th Cir. 2017).

Defendant argues that summary judgment is warranted because the evidence cannot reasonably show that it retaliated against Plaintiff either for requesting breaks or for filing a discrimination charge. (*See* Mot. at 6–10.) Plaintiff responds by advancing two theories, and the Court considers each in turn.

### 1. Reduced Hours

Plaintiff first claims that Defendant retaliated by cutting her hours. (Resp. at 7.) Relying on Plaintiff's time records, Defendant responds that Plaintiff's hours and earnings actually increased by more than 30 percent after the September 26 incident. (Mot. at 7; Reply at 4–5.) Plaintiff does not dispute this evidence; instead, she suggests that it "does not in any way change the undisputed evidence that her *scheduled* hours were cut." (Resp. at 8 (emphasis added).) According to Plaintiff, this forced her to pick up shifts to make up for what otherwise would have been lost time and income. (*Id.* at 7.) To reasonably be considered an adverse employment action, though, more is required.

An undesirable employment decision is not inherently adverse. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Rather, "only non-trivial employment actions that would deter reasonable employees from complaining about [Title VII/FLSA/AEPA] violations will constitute actionable retaliation." *Id.*; *accord Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000). Common examples include termination, poor employment references or performance reviews, and denied promotions. *Brooks*, 229 F.3d at 928. Placement on paid administrative lead, modified job

responsibilities, social ostracization, and other "mere inconveniences," on the other hand, will not qualify. *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936, 941–42 (D. Ariz. 2006) (quotation omitted).

Plaintiff's initial inclination is correct: "[a] reduction in hours constitutes an adverse employment action." *EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1030 (D. Ariz. 2013) (citing *Ray*, 229 F.3d at 1243). But there must be some evidence of an actual reduction. *See id.* (finding material dispute where evidence suggested plaintiff may or may not have lost overtime hours after filing discrimination charge). And that reduction must reasonably be understood to have "materially affected" Plaintiff's employment—in this case, her compensation. *See Davis v. Team Elec., Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *cf. Clausnitzer v. Fed. Express Corp.*, No. SACV 05-1269 DOC (ANx), 2016 WL 3570461, at *14–15 (C.D. Cal. Mar. 18, 2008) (finding increased income inconsistent with claimed reduction in hours). Plaintiff points to no evidence that might reasonably cast doubt on the time records reflecting an increase in her hours. Likewise, though fewer scheduled hours surely raised the specter of reduced hours and income, this unrealized possibility cannot reasonably constitute a materially adverse action.

### 2. Termination of Employment

Termination can be adverse employment action. *Brooks*, 229 F.3d at 928. However, Plaintiff's termination-based theory lacks any evidence to reasonably suggest Defendant's proffered reason for terminating her is pretextual. Defendant insists that it terminated Plaintiff because she took a photo of a customer's contact information without Defendant's or the customer's permission. (Mot. at 9.) Plaintiff does not deny doing so. (*See* Resp. at 11.) In fact, she admitted as much at her deposition. (Behan Dep. at 196:6–21.) Plaintiff instead argues that Defendant was wrong to consider it a violation of the company's confidentiality policies. As Plaintiff saw it, the information was not confidential, and she was using it for a sympathetic purpose—namely, to contact the customer, a charity, because Defendant had "secretly canceled the customer's order leaving homeless children without a holiday meal." (Resp. at 11.) Plaintiff separately maintains that she has already

"demonstrated pretext through showing her hours were reduced, pumping accommodations were not provided, and she was terminated." (Resp. at 9.) Neither argument suffices.[8]

Plaintiff's motive is irrelevant to the legitimacy of Defendant's termination decision. *See Knox v. U.S. Rental Highway Techs, Inc.*, No. CIV 07-0297-PHX-DKD, 2009 WL 806625, at *5 (D. Ariz. Mar. 26, 2009) (assessing causation by asking whether "a retaliatory motive played a part in the employment action"). The same is true of the information's disputed confidentiality. It is not the Court's place to second guess the efficacy of Defendant's policy interpretations. Causation is a question of substantial motivation, not investigational precision. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("[C]ourts only require that an employer honestly believe its reason for its actions, even if its reason is foolish or trivial or even baseless.") (quotation and modification omitted). Whether Plaintiff in fact violated Defendant's confidentiality policy "is of no moment." *See Rowberry v. Wells Fargo Bank NA*, No. CV-14-01801-PHX-DLR, 2015 WL 7273136, at *6 (D. Ariz. Nov. 18, 2015). The test is whether Defendant's termination decision was substantially motivated by Plaintiff's discrimination charge.

Plaintiff's other evidence of pretext is similarly insufficient. Termination and denial of breaks alone do not intrinsically suggest a retaliatory motive. More fundamentally, these incidents fall short of the "specific, substantial evidence of pretext" required to avoid summary judgment. *See Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995). Examples include an employer's reliance on "fundamentally different justifications" for termination, *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997), disparate treatment relative to similarly situated employees, *Reynaga*, 847 F.3d at 694–95, and close temporal proximity between the protected activity and the adverse employment action, *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011). Though Plaintiff accuses

---

[8] Referring to a separate motion that has since been denied (Doc. 45), Plaintiff asks the Court to strike Defendant's reliance on a photo that purportedly shows Plaintiff taking a picture of the customer information at issue. (Resp. at 2.) Plaintiff contends that this photo is a still frame taken from an otherwise exculpatory video that Defendant destroyed. (*Id.*) Regardless of its veracity, this argument is mooted by Plaintiff's admission that she copied the information without permission. (*See* Behan Dep. at 196:6–21.) Having no need to consider the photo in resolving this motion, the Court declines to reach the spoliation issue.

Defendant of changing its termination notice after the fact, she offers no evidence supporting this assertion. (*See* Resp. at 3, 12.) Plaintiff is accordingly left to rely exclusively on temporal proximity.

The Court is unpersuaded by Plaintiff's argument that the "very close" timing between her break requests, discrimination charge, and eventual termination suffices to defeat summary judgment. (*See id.* at 7.) Courts typically eschew formulaic assessments of temporal proximity. *See Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003) ("[W]e caution that a specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic."). Even so, temporal proximity alone remains "ordinarily insufficient to satisfy the secondary burden to provide evidence of pretext." *Hooker v. Parker Hannifin Corp.*, 548 F. App'x 368, 370 (9th Cir. 2013); *see also Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) ("Here, mere temporal proximity, with nothing more, is insufficient to establish pretext."). Of course, there are "some cases" in which "temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." *Dawson*, 630 F.3d at 937. Just not this one. *Cf., e.g., id.* (two days); *Bell v. Clackamas Cty.*, 341 F.3d 858, 866 (9th Cir. 2003) (four days); *Rangel v. Am. Med. Response W.*, No. 1:09–cv–01467–AWI–BAM, 2013 WL 1785907, at *13 (E.D. Cal. Apr. 25, 2013) ("no more than 18 days").

Almost five months lapsed between the September 2016 incident and Plaintiff's decision to file a discrimination charge the following February. Another two months passed before she was terminated, by which time the EEOC had already dismissed the charge. Even if timing alone establishes *prima facie* causation, it is not enough to create a triable issue of pretext. Though the timeline is certainly suggestive, Plaintiff's admission that she photographed customer information without permission raises questions of motive that temporal proximity alone cannot overcome. The Court accordingly grants summary judgment on Plaintiff's retaliation claims.

## C. Sex Discrimination (Counts Three and Five)[9]

Plaintiff's evidence of sex discrimination falls short as well. Proving sex discrimination under Title VII and the Arizona Civil Rights Act ("ACRA")[10] likewise follows the *McDonnell Douglas* framework. As before, Plaintiff must first make a *prima facie* case by showing that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Davis*, 520 F.3d at 1089; *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) ("[ACRA] is generally identical to Title VII, and therefore federal Title VII case law is persuasive in the interpretation of [ACRA].") (quotations and modification omitted). If she does so, the burden shifts to Defendant, who must provide a legitimate, nondiscriminatory reason for that action, after which the burden shifts back to Plaintiff, who must show that the reason is pretextual. *Id.*

The Pregnancy Discrimination Act ("PDA") amended Title VII to include "pregnancy, childbirth, or related medical conditions" in its definition of sex-based discrimination. 42 U.S.C. § 2000e(k)(2). Defendant does not contest Plaintiff's argument that breastfeeding is a protected classification. (Mot. at 10). Though the Ninth Circuit has not considered the issue, the two circuits that have agree that breastfeeding falls within the ambit of "related medical conditions." *See EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 (5th Cir. 2013) ("Lactation is the physiological process of secreting milk from mammary glands and is directly caused by hormonal changes associated with pregnancy and childbirth."); *Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253, 1260 (11th Cir. 2017) ("Taking adverse actions based on woman's breastfeeding is prohibited by the PDA but employers are not required to give special accommodations to breastfeeding mothers.").[11] This Court previously has reached the same conclusion. *See Clark*, 2018 WL 1942771, at

---

[9] The Court's reasoning also applies to Count Four insofar as it alleges sex-based discrimination in violation of state law.
[10] A.R.S. § 41–1463(B).
[11] *See also* EEOC Guidance No. 915.003, *Pregnancy and Related Issues* (June 25, 2015), 2015 WL 4162723, at *8 (adopting position that lactation is protected by PDA).

*15 ("Discrimination because of status as a lactating mother qualifies as sex discrimination under the PDA."). Because it remains a matter of first impression in this circuit, the resolution of which is not necessary to disposition of this motion, the Court assumes without finding that Plaintiff's status as such is protected under the PDA.

Plaintiff argues that she was discriminated against when Defendant denied her the ability to express breastmilk at work.[12] (Resp. at 12.) Defendant responds by (1) attacking Plaintiff's job performance, (2) insisting she was permitted to take as many breaks to pump as she needed (so long as she was off-the-clock), and (3) indicating a lack of similarly situated employees who received more favorable treatment. (Mot. at 11–13; Reply at 8–9.) The third argument resolves the motion.

To satisfy this element of her *prima facie* case, Plaintiff relies on her own testimony that kitchen staff and other servers were permitted to take food and smoke breaks. (Resp. at 14.) Her testimony also recalls that three other lactating employees were each permitted to pump at work, including one server who "was given breaks to pump while her coworkers covered her tables."[13] (*Id.* at 15.) Neither group includes a suitable comparator.

Other lactating employees, by definition, cannot be similarly situated. *See Davis*, 520 F.3d at 1089 (requiring evidence of "similarly situated individuals *outside her protected class*") (emphasis added). And Plaintiff's comparison to kitchen staff and other servers is overbroad. The requirement for similarly situated comparators functions to assess whether the claimant's protected classification—in this case, breastfeeding—in fact motivated the adverse action. Comparing Plaintiff to the kitchen staff (of which she was not a member) or unspecified servers offers scant insight. Allowing meal or smoke breaks

---

[12] The Court has already rejected Plaintiff's assertion that Defendant's alleged reduction in her scheduled work hours constitutes an adverse employment action. It does not reconsider the argument here. (*See* Resp. at 13.) Nor can her termination be considered an adverse employment action for the purposes of her discrimination claim. Plaintiff admittedly stopped breastfeeding in December 2016. (PSOF ¶ 22.) Therefore, even assuming breastfeeding's protected status, that status had lapsed when she was terminated nearly four months later.

[13] The latter comparator is perplexing given Plaintiff's stated rationale for pumping once per shift despite needing to pump twice. Plaintiff testified that "I didn't want to leave my tables, I didn't like other people watching my tables, so I would just do it once a day to make sure I could keep my flow going." (Behan Dep. at 141:18–21.)

does not intrinsically suggest a breastfeeding-related motive for Defendant's rule that Plaintiff be off-the-clock when she took pumping breaks. An acceptable comparator would instead be an employee with a "similarly limiting medical condition[]." *See* EEOC Guidance No. 915.003, 2015 WL 4162723, at *8; *see also Hicks v. City of Tuscaloosa*, No. 7:13-cv-02063-TMP, 2015 WL 6123209, at *19 (N.D. Ala. Oct. 19, 2015) (agreeing that "a lactating employee may not be treated differently in the workplace from other employees with similar abilities to work"). Since Plaintiff presents no evidence from which a reasonable factfinder might conclude that similarly situated employees were treated more favorably, the Court grants summary judgment on these counts.

### D. Wrongful Termination and IIED (Counts Six and Seven)

Summary judgment is also warranted on Plaintiff's remaining claims. Plaintiff claims Defendant terminated her for complaining about inadequate breast pumping accommodations. (Resp. at 16.) Given Arizona courts' reliance on federal caselaw when interpreting anti-retaliation claims under the ACRA, there is no reason to construe this claim any differently than Plaintiff's federal anti-retaliation claims. *See Najar v. State*, 9 P.3d 1084, 1086–87 (Ariz. Ct. App. 2000) (applying same analysis for Title VII retaliation and Arizona wrongful termination claims); *see also Storey v. Chase Bankcard Servs., Inc.*, 970 F. Supp. 722, 724 (D. Ariz. 1997) ("[D]ecisions interpreting Title VII are regarded by Arizona's courts as persuasive authority in interpreting ACRA, unless any particular part of Title VII affords greater coverage.").

Arizona courts are generally reluctant to find conduct "extreme and outrageous" in the employment context. *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) ("It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.") (quotation and modification omitted). This is so even when the conduct is discriminatory or retaliatory. *See id.* And Plaintiff has shown neither.

1     **IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 46) on the entirety of the Amended Complaint.

    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment for Defendant and to close this case.

Dated this 27th day of March, 2019.

_____
Honorable John J. Tuchi
United States District Judge